## Etta Davis, Appellee, v. St. Louis, Springfield and Peoria Railroad Company, Appellant.

1. CARRIERS—*what constitutes delivery of trunk.* Where plaintiff
upon arrival at defendant's depot gives the check for her trunk to the
station agent who promises to secure a drayman to deliver it, the giving
of the check to the agent does not constitute a delivery of the trunk
to plaintiff.

2. CARRIERS—*when carrier owes duties of a warehouseman.* Where
plaintiff pays a charge in addition to her railroad fare for the trans-
portation of her trunk, and on arrival at her destination gives the
check to the station agent who promises to have the drayman deliver
the trunk, and the trunk is placed in the waiting room and during the
night its contents are stolen, defendant owes plaintiff the duty of a
warehouseman, and not having exercised due care is liable for the
loss.

Appeal from the City Court of Litchfield; the HON. PAUL Mc-
WILLIAMS, Judge, presiding. Heard in this court at the October
term, 1912. Affirmed. Opinion filed April 18, 1913.

MILLER & McDAVID and H. C. DILLON, for appellant; GEORGE W. BURTON and GEORGE W. BLACK, of counsel.

T. A. GASAWAY, for appellee.

MR. JUSTICE PHILBRICK delivered the opinion of the court.

Appellee with her husband became passengers on November 9, 1911, on appellant's railroad, from Carlinville, to Litchfield, Illinois, and paid appellant a charge of twenty-five cents for the transportation of a trunk in addition to the railroad fare. The trunk and a go-cart were each checked by appellant company, checks being placed thereon and duplicate checks given to appellee. The interurban car upon which they had taken passage arrived at Litchfield at about five-thirty P. M., it was getting dusk and a slight rain was falling. The trunk on being taken from the car was placed upon a truck used for that purpose by appellant's agent at Litchfield. Appellee surrendered the check for the go-cart and took it with her when she left the depot at Litchfield. The agent of appellant at Litchfield was acquainted with appellee and her husband, and they inquired of him where they could get a drayman to take the trunk to their place of destination. The agent replied, "The transfer man is not here now, but just leave your check with me and I will see that a drayman brings the trunk to you." The agent of appellant then telephoned to the hotel at Litchfield, and inquired for the owner of the transfer wagon but he was not at the hotel and appellant's agent did not get in communication with him at that time. The trunk had in the meantime been left upon the truck at the station. The agent of appellant tried on two other occasions that evening to get in communication with the transfer man for the purpose of having him deliver the trunk, but failed to do so; and the trunk was

still at the station when the agent left his work that evening.

No one was on duty at the station during the night, but it was left open for the accommodation of any passengers that might have occasion to use it; before the agent left the station he carried the trunk into the waiting room of appellant's station where he left it, with the check still thereon. Some time during the night the trunk was stolen and taken some distance from the waiting room, broken open and most of the contents removed and taken away.

Appellee brought action before a justice of the peace for the loss of her property; the action was appealed to the city court of Litchfield, where a judgment was rendered against appellant for $150, from which it appeals.

Appellee concedes that appellant is not liable as a common carrier for the loss of the baggage, but insists that upon the arrival of the trunk at Litchfield, and a failure to remove it from the station by appellee, appellant then owed appellee the duty of caring for the trunk as a warehouseman, and that as a warehouseman it was bound to exercise reasonable and ordinary care in providing a safe place for the trunk until it should be called for by appellee, and insists that appellant did not use such ordinary care but that by leaving the trunk in the unlocked station without any protection whatever during the night it was guilty of such negligence as to render it liable to appellee for the damages sustained.

Appellant, on the other hand, insists that by surrendering her claim check to the agent of appellant at Litchfield with the understanding and promise from him that he would secure a drayman and send the trunk to appellee was a complete delivery of the trunk by appellant to appellee, and that after the surrender of the check upon the promise and understanding of the agent of appellant that he would call a drayman

and have it delivered that this agent then and there
became the agent of appellee, that appellant's liability
then ceased and it owed appellee no further duty, and
that if the station agent was guilty of any negligence
thereafter in failing to take proper and due care of
the trunk it was the negligence of appellee and not of
appellant.

It being conceded by appellee that there is no liabil-
ity of appellant as a common carrier, that question is
eliminated.

Two questions are presented to this court by this
appeal, one whether or not there was a delivery of
the trunk to appellee. If the transaction between the
agent and appellee constituted a delivery of the trunk,
then appellant can be held liable only for gross neg-
ligence; if, on the other hand, the transaction did not
constitute a delivery, then the question arises as to
whether or not appellant owed appellee the duties of
a warehouseman and is liable to her if the loss occurred
by reason of the want of ordinary care on the part of
appellant.

To the contention of appellant that this trunk was
actually delivered to appellee and that thereafter no
liability existed we cannot accede to. The mere giving
of the check to appellant's agent cannot be held to be
a delivery of the trunk. The claim check held by ap-
pellee and surrendered to appellant was a means of
establishing the ownership of the trunk when the same
should be claimed at the point of destination. The
husband of appellee testified that after the failure of
the agent of appellant to secure a drayman or transfer
man for the purpose of delivering the trunk, he tele-
phoned to him and asked him if it would be safe at
the depot during the night, and the agent informed him
that it would be. Appellant insists that by giving the
claim check to appellant's agent for the purpose of
having the trunk sent constituted the agent from that
time the servant of appellee; even if this contention

is correct, the agent then held the check as the agent of appellee, he did not thereafter as her agent surrender it to appellant as the portion of the check placed on the trunk was still there at the time it was taken from the depot, and if the agent was by these acts constituted the agent of appellee, he as her agent never called for the trunk, and it was still in appellant's custody. In our opinion, there was no delivery of the trunk to appellee on the night of November 9 by the surrender of the claim check to the agent of appellant.

The record discloses that in addition to the railroad fare for the transportation of appellee and her husband, a charge was made for the transportation of the trunk, appellant contracted to transport the trunk as a common carrier to Litchfield and after its arrival at Litchfield, appellant owed appellee the duty of a warehouseman and was required to use ordinary care for the safe keeping of this trunk until it should within a reasonable time be called for and taken away by appellee. And the trunk having arrived at Litchfield at about five-thirty in the evening, it was not an unreasonable delay to have waited until the following morning to have taken the trunk from appellant's possession at the depot. It was appellant's duty to see that the trunk was kept in a reasonably safe place awaiting its removal by appellee, and appellant was bound, in the exercise of this ordinary care, to use such care as a person would ordinarily use for the protection of articles of this character. To place the trunk in the waiting room of the depot with no one at or near the station to see that it would not be removed, and leave it exposed to the view and temptation of any evil minded person who might go into the depot for a lawful purpose or otherwise, was a want of ordinary care on the part of appellant.

We find nothing seriously objectionable in the arguments of counsel to the jury.

The judgment is correct and should be affirmed.

*Judgment affirmed.*